**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| JAMES GIBSON, individually and on behalf of all others similarly situated, § § § § *Plaintiff,* § § v. § § MOLINA HEALTHCARE OF § TEXAS, INC., § § *Defendant.* § § | Civil Action No. 4:22-cv-03818 Class Action Complaint |

## CLASS ACTION COMPLAINT

Plaintiff James Gibson ("Gibson" or "Plaintiff"), individually and on behalf of others similarly situated, by and through his attorneys, filed this Class Action Complaint against Defendant Molina Healthcare of Texas, Inc. ("Defendant" or "Molina"), states:

## INTRODUCTION

1. Gibson brings this case to protect the privacy rights of himself and two classes of similarly situated people who: (1) were called on their phones by or on behalf of Molina using an artificial or prerecorded voice despite not having provided Molina prior express written consent to place such calls; and/or (2) were called on their phones by or on behalf Molina despite having their numbers registered on the National Do-Not-Call Registry. Molina's conduct violates the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 *et seq*. and the TCPA's corresponding regulations.

1

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed into law the TCPA, to protect consumers' privacy rights. Specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. § 227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3)

2

8. Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10. In 2022 alone, approximately 36.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited October 25, 2022). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

11. Unwanted robocalls soliciting health insurance have proliferated in recent years. *See* Barbara Feder Ostrov: "There's an 'epidemic' of robocalls offering health insurance. Don't fall for their traps" (LOS ANGELES TIMES, November 6, 2018), *available at*: https://www.latimes.com/business/la-fi-robocalls-health-insurance-20181106-story.html.

3

12. Many insurers profit heavily from these unlawful robocalls but seek to absolve themselves of liability by creating unenforced "policies" ostensibly disclaiming unlawful robocalls by agents, but turning the blind eye to the robocalls that bring about profits for the insurers.

13. This case involves one of those insurers - Molina, which turned the blind eye to the irritating, disruptive and unlawful robocalls of its agent-broker, National United Group, LLC ("NUG").

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

15. This Court has personal jurisdiction over Defendant Molina is headquartered in the State of Texas and regularly transacts business in the State of Texas.

16. Furthermore, Molina by and through its agent, placed calls to Plaintiff's "832" area code, which is a Texas area code.

17. Defendant also caused to be delivered a health insurance policy to Plaintiff in Cypress, Texas, which is located within this District.

18. Plaintiff experienced annoyance, irritation and disruption from the offending telemarketing calls within this District.

19. Accordingly, personal jurisdiction exists and venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

## PARTIES

20. Plaintiff James Gibson is an individual who at all times relevant to this Complaint resided in Cypress, Texas 77433 and who is a citizen of the State of Texas.

21. Defendant Molina is an insurance company that sells health insurance policies to Texas residents and is a subsidiary of Molina Healthcare, Inc.

22. Molina maintains its headquarters at 1660 Westridge Cir N, Irving, TX 75038

23. Molina markets its health insurance policies, in part, through telemarketing.

24. Molina is a "person" as that term is defined by 47 U.S.C. § 153(39).

25. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## FACTUAL BACKGROUND

### Molina and its relationship with its brokers/agents

26. To sell its insurance policies, Molina contracts with agencies and brokers it calls "producers" through contracts similar to memorialized in part through the Molina Healthcare Producer Guide.[1]  A true and correct copy of the 2021 Producer Guide is attached as Exhibit A.

27. The Producer Guide reflects that Molina has the ability and right to strictly direct and control virtually all business activities of its brokers who sell Molina insurance policies, including the marketing of Molina insurance policies.

28. Molina brokers or "producers" are given access to the online Molina Broker Portal to engage and track business activities.  Ex. A, pp. 35-36.

---

[1] While the Producer Guide was authored by Molina's national entity, it is applicable to Molina's Texas affiliate, which is the Defendant in this matter.

5

29. The Producer Guide authorizes agents to use Molina's approved tradename, and proprietary information to solicit and advertise its health insurance, but only if the agent first obtains written authorization from Molina. Ex. A, p. 40.

30. When an agent/broker is authorized by Molina to sell its policies, the agent is "appointed" by Molina.

31. Demonstrating the ability to control its brokers/agents, the Producer Guide provides that Molina provides "Agent Oversight" and has the right to audit its brokers and place agents on Molina's "agent watch list", to monitor activities, reprimand, suspend, re-train and terminate given Molina agents. Ex. A, p. 37.

32. When selling Molina insurance policies, Molina-appointed agents must identify themselves as "representing Molina Healthcare" Ex. A, p. 38.

33. Molina policies sold can only be distributed in the precise manner dictated by Molina.

34. Molina pays its brokers commission per each enrollee, encouraging signing up as many enrollees as possible.

35. At all times material to this Complaint, NUG acted as a broker for Molina and was appointed to sell Molina policies, subject to the direction and control of Molina.

36. NUG's insurance brokers (who were screened and "appointed" by Molina) sold insurance policies that contributed to Molina's profits. In return, Molina paid commissions to NUG and/or NUG's Molina-appointed brokers/agents.

37. Accordingly, Molina acted as the principal, and NUG acted as its agent. NUG's Molina-appointed brokers also acted as Molina agents and/or Molina sub-agents.

**Facts Specific to James Gibson**

38. At all times relevant to this Complaint, Gibson owned a cell phone, the number for which was (832) XXX-6071.

32. Gibson was the subscriber to his cell phone plan.

33. Gibson was the only subscriber to that plan, and he subscribed as an individual rather than a business.

34. Gibson used that cell phone primarily for residential purposes. Namely, to communicate with friends and family members.

35. Gibson registered his cell phone number on the National Do Not Call Registry in or around February 2012, in order to obtain solitude from unwanted and invasive telemarketing calls.

36. Beginning in or around July of 2020, NUG began a campaign of placing irritating unwanted calls to Gibson's cell phone, soliciting Molina healthcare policies.

37. On instances when Gibson would answer calls regarding Molina, a pre-recorded Spanish-language message would play immediately after Gibson answered.

38. Each of the calls at issue were made to solicit Gibson to purchase a Molina insurance policy.

39. Despite the FCC's requirement that a "seller" have the written consent of a called party before placing solicitation calls, Gibson never provided express written consent, or any consent, to Molina or its agent(s) or sub-agent(s), to place such telemarketing calls.

40. Gibson did not have any prior business relationship with Molina or NUG before he began receiving the unwanted telemarketing calls regarding Molina.

41. At the time of the violative calls, Gibson had active health insurance and was not in the market for, nor was he interested in, health insurance.

42. Each of the robocalls Gibson received utilized an identical pre-recorded voice in Spanish.

43. Gibson, who does not speak fluent Spanish, was unable to understand the Spanish-language pre-recorded messages and could not meaningfully engage with a live agent after the pre-recorded message would play.

44. In order to ascertain the identity of the calling party, Gibson sought the assistance from a Spanish-speaking co-worker, Juliana, to translate the messages and determine who was behind the calls.

45. On or about December 28, 2020, while at work, Gibson received a similar pre-recorded call in Spanish. Gibson then gave his phone to a Spanish-speaking co-worker to investigate who was incessantly calling Gibson's phone.

46. Thereafter, Gibson's co-worker Ariana, engaged with the caller and agreed to enroll in a Molina health insurance policy.

47. Shortly thereafter in January 2021, Plaintiff received notice that, upon the investigative purchase, "Molina Healthcare of Texas Regional Office" Attempted to charge him and/or his co-worker. *See* Exhibit B.

48. Gibson also received correspondence delivered to his address in the name of his co-worker, who assisted with the investigative purchase, confirming she enrolled in a Molina healthcare policy. A true and correct copy of the correspondence is attached as Exhibit C.

49. Shortly thereafter, on January 7, 2021, NUG texted Plaintiff from the number 786-321-0798 (a number confirmed to belong to NUG) with the following message:

> Msg from Delio: Hola Juliana, tu plan de Seguro de salud ha sido seleccionado #2164253 (Molina Core Care Bronze 5 HMO $52/mes) Saludos, Delio

> [Translation] Msg from Delio: Hello Juliana, your Health Insurance plan has been selected #2164253 (Molina Core Care Bronze 5 HMO $52/month) Regards, Delio

A true and correct copy of that text message is attached as Exhibit "D."[2]

50. Because of the direction and control Molina can and does exercise over NUG, the acts and omissions of NUG in connection with its marketing of Molina insurance can be imputed to Molina.

51. Furthermore, by accepting a sale made by Molina's agents using unlawful means, with reason to know the calls were unlawful, Molina ratified NUG's violative conduct.

52. In total, Mr. Gibson received at least the following calls from NUG on behalf of Molina:

| Date | Caller ID: |
|---|---|
| July 3, 2020 | 254-520-7241 |
| July 31, 2020 | 464-566-6064 |
| August 25, 2020 | 281-639-8292 |
| August 31, 2020 | 940-855-6563 |
| September 4, 2020 | 430-775-6609 |
| September 9, 2020 | 214-613-8812 |
| October 20, 2020 | 903-868-4302 |
| October 29, 2020 | 832-754-8573 |
| November 11, 2020 | 832-537-6558 |
| December 10, 2020 | 832-243-4665 |
| December 10, 2020 | 832-573-4013 |
| December 11, 2020 | 832-577-2888 |
| December 16, 2020 | 936-419-3888 |
| December 18, 2020 | 830-345-5171 |
| December 18, 2020 | 832-835-8755 |

---

[2] Juliana is the name of Plaintiff's co-worker who "enrolled" in the healthcare policy for investigative purposes.

| December 28, 2020 | 979-848-8467 |

53. Upon information and belief, Gibson received additional calls from NUG on behalf of Molina that are not included in the list above.

54. Each of the calls at issue were made for telemarketing purposes and did not convey exigent healthcare information.

55. Gibson was annoyed, irritated, upset and experienced a sense that his privacy was violated by Defendants as a result of receiving the numerous phone calls and text messages after he had long been registered on the National Do Not Call Registry.

56. The foregoing acts and omissions violated the TCPA and its corresponding regulations.

**Vicarious Liability**

57. Molina cannot absolve itself from liability simply by outsourcing illegal robocalling to various agents, call centers and vendors, and is vicariously liable for the calls at issue.

58. The FCC has long made clear that "sellers" (companies like Molina that rely on third-party vendors to telemarket on their behalf) may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or

> law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

59. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

60. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. At 6593.

61. Molina permitted and enjoyed the benefits of NUG's mass robocalling.

62. Molina acted as the principal to NUG, who acted as its agent.

63. NUG's brokers/agents were each appointed by Molina to sell Molina insurance and acted as agents and/or sub-agents of Molina.

64. Molina is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from unlawful robocalls made by agents, call centers and vendors.

65. For the counts identified below, Defendant Molina is vicariously liable for the unlawful calls.

## Class Allegations

66. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Gibson brings this lawsuit as a class action on behalf of himself and all other similarly situated.

67. Likewise, upon information and belief, at all times relevant to this Complaint, Molina did not obtain express written consent or permission to place telemarketing calls to Gibson and the putative class members even though Gibson and the putative class members placed their phone numbers on the National Do-Not-Call Registry.

68. Molina also did not obtain express written consent or permission to place calls (through its agents and/or sub-agents) to Gibson and the putative class members using an artificial or pre-recorded voice.

69. Molina's calls were made for telemarketing purposes, not for emergency purposes.

70. Molina's calls were also not for conveying exigent health information.

71. Gibson seeks to represent the following classes:

   a. **Prerecorded Voice Class:** All persons in the United States with cell phone numbers who from four years prior to the filing of the Complaint until trial, to whom NUG, by and through its agents, placed calls on Molina's behalf using a prerecorded or artificial voice; and

   b. **Do-Not-Call Registry Class:** All persons in the United States who from four years prior to the filing of this Complaint until trial: (1) whose telephone numbers were on the National Do-Not-Call Registry for at least 31 days; (2) received more than phone call from NUG on behalf of Molina, for the purpose of soliciting Molina's goods or services; and, (3) within a twelve-month period.

72. Gibson may add administrative subclasses or to amend the definition of the proposed classes as circumstances dictate.

73. The members of the proposed classes are so numerous that joinder of all members is impracticable. Gibson reasonably believes that hundreds or thousands of people have been harmed by Molina's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Molina or those acting on its behalf.

74. Most members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

75. On information and belief, Molina has called and continues to call/text people who are registered on the National Do-Not-Call Registry. It is reasonable to expect that Molina will continue to make such calls/texts absent this lawsuit.

76. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether Molina or someone acting on its behalf placed calls to Gibson and the putative class members using an artificial or pre-recorded voice without having prior express written consent;
   b. Whether Molina or someone acting on its behalf placed two or more telemarketing calls to Mr. Gibson and the putative class members after their numbers were registered on the National Do Not Call Registry more than 31 days;
   c. Whether Molina's policies and procedures for providing disclosure that telemarketing calls would be made to a consumer was adequately clear and conspicuous;
   d. Whether Molina's policies and procedures for procuring express written consent or permission to place telemarketing calls to consumers on the Do Not Call Registry were adequate;
   e. Whether Molina's conduct violates 47 U.S.C. § 227(b)(1);
   f. Whether Molina's conduct violates 47 U.S.C. § 227(c)(5);
   g. Whether Molina's conduct violates the rules and regulations implementing the TCPA;
   h. Whether Gibson and the putative class members are entitled to increased damages for each violation based on the willfulness of Molina's conduct.

77. Gibson's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

78. Gibson and his counsel will fairly and adequately protect the interests of the members of the proposed class. Gibson's interests do not conflict with the interests of the proposed classes he seeks to represent. Gibson has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

79. Gibson's counsel will vigorously litigate this case as a class action, and Gibson and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

80. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed classes in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

81. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

82. Molina has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## COUNT I
## Defendant Violated 47 U.S.C. § 227(b)(1) of the TCPA

83. Plaintiff incorporates the forgoing paragraphs as if fully set forth in this Count.

84. Gibson brings this Count individually and on behalf of all others similarly situated.

85. The TCPA prohibits placing calls using an artificial or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

86. By calling Gibson and the putative class members with a prerecorded voice, and without prior express consent of the called party to make such calls, Molina violated the TCPA including but not limited to 47 U.S.C. § 227(b)(1) and the TCPA's corresponding regulations.

87. The TCPA provides a private right of action and statutory damages of $500 per violation, and up to $1,500 if the violated is determined to be willful. 47 U.S.C. § 227(b)(3).

88. Molina initiated numerous calls to Gibson and the putative class members using an automatically generated or pre-recorded voice.

89. Molina's calls were not made for "emergency purposes."

90. Molina's calls to Gibson and the putative class members were made without first obtaining prior express written consent.

91. Molina's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Gibson's rights under the law and with the purpose of harassing Plaintiff and the putative class members.

92. Gibson and the putative class members are entitled to damages of $500.00 per violation for each call placed by Molina and up to $1,500.00 per violation if the Court finds that Molina willfully violated the TCPA.

WHEREFORE, Plaintiff James Gibson, individually, and on behalf of all others similarly situated, requests the Court enter judgment against Defendant Molina Healthcare of Texas, Inc. and grant the following relief.

a. Enter an order against Molina pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Gibson as the class representative;

b. Enter an order appointing Kimmel & Silverman, P.C. and Butsch & Roberts LLC as class counsel;

c. Enter judgment in favor of Gibson and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(b) (and its corresponding regulations) and up to $1,500 per violation of each subsection if Molina willfully violated the TCPA;

d. Award Gibson and the class all expenses of this action, and requiring Molina to pay the costs and expenses of class notice and administration; and,

e. Award Gibson and the class such further and other relief the Court deems just and appropriate.

## COUNT II
## Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) of the TCPA

93. Gibson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

94. Gibson brings this Count individually and on behalf of all others similarly situated.

95. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do-Not-Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

96. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do-Not-Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C.

§§ 227(c)(5).

97. In addition, the TCPA allows the Court to enjoin Molina's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do-Not-Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

98. By calling Gibson and the putative class members after their numbers were registered on the National Do-Not-Call Registry, Molina violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

99. Molina knew or should have known that Mr. Gibson and the putative class members had their numbers registered on the Do Not Call Registry.

100. Gibson and the putative class members are entitled to damages of $500.00 per violation for each call placed by Molina and up to $1,500.00 per violation if the Court finds Molina willfully violated the TCPA.

WHEREFORE, Plaintiff James Gibson, individually, and or behalf of all other similarly situated, requests the Court enter judgment against Defendant Molina Healthcare of Texas, Inc. and grant the following relief:

   a. Enter an order against Molina pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Gibson as the class representative;
   b. Enter an order appointing Kimmel & Silverman, P.C. and Butsch & Roberts LLC as class counsel;
   c. Enter judgment in favor of Gibson and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) (and its corresponding regulations) and up to $1,500 per violation of each subsection if Molina willfully violated the TCPA;
   d. Enter a judgment in favor of Gibson and the putative class that enjoins Molina from violating the TCPA's regulations prohibiting Molina from calling/texting numbers registered on the National Do-Not-Call Registry;

e. Award Gibson and the class all expenses of this action, and requiring Molina to pay the costs and expenses of class notice and administration; and,

f. Award Gibson and the class such further and other relief the Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

**Please take notice** that Plaintiff, **James Gibson,** demands a jury trial in this case.

Respectfully submitted,

Dated: November 1, 2022

By: */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Phone: 215-540-8888
Facsimile: 877-788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

*/s/ Christopher E. Roberts*
Christopher E. Roberts, Esq.
SDTX # 3708019
Butsch Roberts & Associates LLC
231 S. Bemiston Ave., Suite 260
Clayton (St. Louis), MO 63105
Telephone: (314) 863-5700
Facsimile: (314) 863-5711
croberts@butschroberts.com